MAX K. RAUHUT

*v.*

ANNA L. REINHART, Executrix of LENA M. RAUHUT, deceased.

*New Castle, October 4, 1935.*

REINHARDT, J., sitting.

*Robert G. Harman,* for exceptant.

*Albert W. James,* for defendant.

REINHARDT, Judge: At the hearing of the cause testimony was taken, certain exhibits were admitted in evidence and the deposition of Anna L. Reinhart was, by agreement, also admitted in evidence.

Taking up the first exception. There was no conflict of testimony as to the matters set out in the first exception. I find that Julius W. Rauhut and Lena M. Rauhut were husband and wife and in their lifetime were the joint holders of the title to a mortgage of One Thousand Dollars covering the property No. 7 Fifth Avenue. In the mortgage Julius W. Rauhut and his wife, Lena M. Rauhut, appear as mortgagees with no qualification upon their estate or interest in the mortgage. The petitioner, Max K. Rauhut is the son of Julius W. Rauhut and Lena M. Rauhut. In his petition he claims that the interest in the One Thousand Dollar mortgage was held by his parents as tenants by the entirety and that the right of survivorship is an incident of this tenancy just as at common law the right of survivorship is an incident of tenancy by entirety of real property.

The defendant, Anna L. Reinhart, is a daughter of Julius W. Rauhut and Lena M. Rauhut and executrix of the estate of Lena M. Rauhut. She claims that there can be no tenancy by entirety in personal property and therefore there can be no incident of the right of survivorship therein. She further claims that the husband and wife held title to the mortgage in question as tenants in common and upon the death of Julius W. Rauhut one-half of the proceeds of the mortgage became a part of his estate and should be accounted for as such by his administratrix.

The question then is whether words which create an estate in a husband and wife by the entirety if used in re-

pect to real estate, would create a similar interest in them if the subject matter be personalty, so that when one dies the survivor will become entitled to the whole in right of his or her survivorship.

On this question there is much conflict of authority. In our Court of Chancery Chancellor Wolcott in the case of *Ciconte v. Barba,* 19 *Del. Ch.* 6, 161 *A.* 925, had under consideration a similar question. The facts were that title to a piece of real estate was held by husband and wife. The real estate was sold, and a purchase money mortgage taken as part payment therefor. The title to the mortgage was held by the husband and wife as the title to the real estate had been held before the sale thereof. The Chancellor held, in part, as follows:

"There are cases which announce in unequivocal terms that estates by the entirety in the field of real property had their counterpart at common law in personal property. On the other hand other cases announce with equal positiveness that such a thing as an estate or interest by the entirety in personalty was unknown to the common law. * * * * In a note to 8 *A. L. R.* 1018, it is stated, and accurately I believe, that 'the decided weight of authority is to the effect that estates by the entirety may exist in personalty as well as in realty.' The annotator has collected and cited numerous cases in support of his text. To apply the term 'estate by the entirety' to personal property is perhaps an offense against the principle of precision in legal terminology, because that term is rather intimately associated with real property. But whether the term is a technically appropriate one as applied to personal property or not, the weight of authority holds that the same sort of estate or interest which is everywhere recognized in the law of real property as an estate by the entirety, is recognized also as existing in the law of personal property, and that the characteristics incident to such an interest, including of course that of the right of survivorship, are equally present in the one as in the other. * * * * In the instant case we are concerned only with a purchase money mortgage taken by Ciconte and wife to secure the proceeds from the sale of land which they had held as tenants by the entirety, and I am of the opinion that in such a case the survivor takes the whole."

In view of the case last above cited, I am of the opinion that upon the death of Julius W. Rauhut, his wife, Lena M. Rauhut, who survived him, became the owner of the entire title to the mortgage by right of survivorship and I so hold.

The final account of Anna L. Reinhart as executrix of Lena M. Rauhut must be surcharged with the sum of Five Hundred Twenty-one Dollars and Four Cents.

As to the second exception. Here there was a decided conflict in the evidence introduced at the hearing of the cause. Both sides, however, agreed upon the following matters as shown by the evidence.

Lena M. Rauhut, on or about the Twenty-eighth day of September, A. D. 1927, had a savings account with the Wilmington Savings Fund Society in which there was then approximately the sum of Twenty-one Hundred Dollars. She went to the bank with her daughter, Anna L. Reinhart, and had the money transferred to a joint account standing in her name and that of her daughter. The joint account contract, executed by Mrs. Rauhut and her daughter, and the savings pass-book are in evidence. It appears by this contract that the Wilmington Savings Fund Society was authorized to permit the withdrawal of any and all funds by either mother or daughter, and further that upon the death of either the balance of the fund (if any) then on deposit was to belong to the survivor. The contract bears date the Twenty-eighth day of September, 1927.

On the same date Lena M. Rauhut also had a savings account with Artisans Savings Bank in which there was then approximately the sum of Nine Hundred Dollars. The mother and daughter went to Artisans Savings Bank and had this money transferred to a joint account standing in the name of Lena M. Rauhut and Anna L. Reinhart. The joint account contract executed by mother and daughter and the savings pass-book are in evidence. It appears by this joint account contract that the bank was authorized to permit the withdrawal of any and all funds by either mother or daughter, and further that upon the death of either the balance of the fund (if any) then on deposit was

to belong to the survivor. This joint account contract bears date the Twenty-eighth day of September, A. D. 1927.

The problem for this court is to ascertain what was the intention of Lena M. Rauhut when, on September Twenty-eighth, 1927, she created the joint accounts at the two savings banks in the names of herself and her daughter Anna L. Reinhart.

I have read and carefully considered all the evidence, both oral and written, presented by the respective parties, and I think the greater weight of the evidence is in favor of the petitioner Max K. Rauhut.

The evidence of the pass-books, signature cards and joint account contracts, while strong, is not conclusive of the question. 5 *Cyc.* 609; *Craig v. Bradley,* 134 *S. W. (Mo.)* 1081; *Kennebec Savings Bank v. Fogg,* 83 *Me.* 374, 22 *Atl.* 251.

The will of Lena M. Rauhut, made shortly before her death, in which she undertakes to dispose of "the money I have in Bank," affords strong evidence that she regarded the money as hers. It is in evidence that she had no other money in any bank prior to or at the time the will was made. It is also in evidence that she retained in her possession the bank books evidencing the joint accounts after the same were created.

The statements made by Anna L. Reinhart shortly after the funeral of her mother as to the distribution of the money, that "We will do what mother's will intended," is borne out by the distribution of the money as actually made. All of the devisees in the will except Max K. Rauhut, the petitioner, received from Anna L. Reinhart, the executrix, the exact amounts to which, under the terms of the will, they were entitled. Indeed, a check in favor of Max K. Rauhut for the amount of money to which he would have been entitled under the will, was actually drawn

by the executrix but she refused to deliver it to him because, as she says, he made some observations derogatory to his mother. While I cannot help but sympathize with the executrix in her feeling about this alleged conduct of Max K. Rauhut toward his mother, yet the distribution of this money in the joint account must not be governed by feelings but must be made in accordance with the will of Lena M. Rauhut, provided the money in the banks really belonged to her.

After careful consideration of all the evidence I find the money in the two savings banks, amounting to the sum of Three Thousand Dollars, was the money of Lena M. Rauhut notwithstanding the fact that it was deposited in the joint names of the mother and daughter and, this being so, the final account of Anna L. Reinhart as executrix of Lena M. Rauhut must be sur-charged with the sum of Three Thousand Dollars, that being the amount that was standing in the two savings banks aforesaid to the credits of the joint accounts, and it is so ordered.