NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2762
_____

In re:  DON SCIOLI,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(No. 1-13-cv-00369)
District Judge:  Richard G. Andrews
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
Submitted January 22, 2014

Before:  FUENTES and FISHER, *Circuit Judges*, and JONES, II,* *District Judge*.

(Filed: May 22, 2014)
_____

OPINION
_____

JONES, II, *District Judge*:

On January 28, 2013, the Honorable Christopher S. Sontchi of the United States

Bankruptcy Court for the District of Delaware issued an Order and Opinion sustaining

Appellee's Objection to Appellant's claim of certain Exemptions under Fed.R.Bankr. P.

4003(a) and 11 U.S.C. § 522.  Appellant appealed that decision to the United States

_____
*The Honorable C. Darnell Jones, II, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

District Court for the District of Delaware and the same was affirmed on June 10, 2013. For the reasons set forth below, the District Court's decision will be affirmed.[1]

## I.

We write primarily for the benefit of the parties and thus recount only the essential facts and procedural history.

On February 19, 2012, Appellant Don Scioli filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. Although Appellant was married, his wife did not join him in filing for bankruptcy relief. Trustee Alfred T. Giuliano was appointed as the Chapter 7 Trustee of Appellant's bankruptcy case. Appellant filed his Bankruptcy Schedules on April 5, 2012 and listed within Schedule B of same, were three motor vehicles: a 2007 Jeep Wrangler, a 1997 Cadillac Eldorado,[2] and a 2000 Porsche 911. In Schedule C, Appellant claimed the three vehicles were held between he and his wife as tenants by the entireties and were therefore exempt under 11 U.S.C. § 522(b)(3)(B) of the Bankruptcy Code.

A creditors' meeting was held, during which Appellant testified that he had held no personal bank accounts for several years and that all of his bills were paid from the business account of a company ("RED5 Media, Ltd.") he owned with his business

---

[1] The Bankruptcy Court had jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. The District Court had jurisdiction over this matter under 28 U.S.C. §§ 158(a) and 1334. We have jurisdiction over this appeal under 28 U.S.C. §§ 158(d) and 1291.

[2] The Cadillac listed as personal property on Schedule B and as an Exemption on Schedule C is a 1997 Eldorado. However, the Title indicates the vehicle is a 2007 Cadillac Escalade. At a hearing on the Trustee's Objection, Mr. Scioli did not dispute the fact that the Cadillac at issue was a 2007 Escalade and as such, the parties refer to the Escalade in their briefing.

partner, Eric Glass, or from the business accounts of his former company, DNS Funding, Inc. (J.A. Vol. II at 268-269)[3]  On August 21, 2012, Appellee filed his Objection to the Exemptions, asserting that the vehicles were not marital property held by Appellant and his wife as tenants by the entireties.  In support of his Objection, Appellee submitted the Titles to the vehicles, showing that the three vehicles were titled in Appellant's name, alone.

A hearing was held on September 19, 2012, during which Appellee relied solely upon the Titles to support his Objection.  The bankruptcy judge provided both parties an opportunity to submit further briefing and commented to Appellant in particular that he thought doing so "would be appropriate in this case." (J.A. Vol. II at 69).  Appellant was also provided with an opportunity to testify at the hearing but declined, claiming Appellee's offer of Titles alone was insufficient to sustain his burden.  At the conclusion of the hearing, Appellant was informed that if, after reading the parties' briefing, the court thought witness testimony would be necessary in order to make a decision, Appellant would be provided with an opportunity to present same.  In his post-hearing briefing, Appellee provided the court with bank statements to show that in addition to the vehicles being titled solely in Appellant's name, he had made payments on the Jeep with funds from RED5 Media, Ltd.  Although Appellant did subsequently file a sur-reply brief, it was devoid of any evidence to rebut Appellee's claim that the vehicles were not exempt.

---

[3] Appellant's bankruptcy filings were devoid of any information to indicate that his wife held any ownership interest in any of his past or present businesses.

On January 28, 2013, the Bankruptcy Court issued an Order sustaining Appellee's Objection to the claimed Exemptions. The District Court affirmed this decision, concluding that absent any evidence by Appellant to rebut the Title evidence presented by Appellee, Exemptions based on a theory of tenants by the entireties were unfounded.

This appeal followed.

## II

Currently before the court is one issue for our consideration: whether sufficient evidence was presented to rebut the presumed validity of the Exemptions claimed by Appellant pursuant to 11 U.S.C. § 522(b)(3)(B).[4]  In assessing this claim, we "exercise the same standard of review as the District Court when it reviewed the original appeal from the Bankruptcy Court.  Thus, we review the Bankruptcy Court's findings of fact for clear error and exercise plenary review over the Bankruptcy Court's legal determinations."  *Binder & Binder, P.C. v. Handel (In re Handel)*, 570 F.3d 140, 141 (3d Cir. 2009) (citing *In re Woskob*, 305 F.3d 177, 181 (3d Cir. 2002)).

Appellant maintains Appellee has not met his burden of proof with regard to ownership of the three vehicles at issue.  Although the ultimate burden lies with the Objector, Appellant did in fact have a duty to respond to the evidence produced by Appellee as rebuttal to the Exemption:

---

[4] Said Section provides a bankruptcy estate Exemption for "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law."  11 U.S.C. § 522(b)(3)(B).

4

> A claimed exemption is "presumptively valid" . . . . Once an exemption has been claimed, it is the objecting party's burden (the trustee in this case) to prove that the exemption is not properly claimed. Initially, this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. ***If the objecting party can produce evidence to rebut the exemption, <u>the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper</u>***. The burden of persuasion, however, always remains with the objecting party.

*Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (internal citations omitted) (emphasis added).

In this case, Appellee provided the Titles for the three vehicles at issue as evidence to rebut the Exemptions. All three Titles contained Appellant's name only. Delaware law provides that "[t]he Department [of Motor Vehicles], when satisfied that the applicant for a certificate of title is the owner of the motor vehicle, shall thereupon issue ***in the name of the owner*** a certificate bearing a serial number and the signature of the Secretary, under the seal of the Secretary's office." Del. Code Ann. tit. 21, § 2306(a) (emphasis added). "Certificate of title to a motor vehicle is generally presumptive evidence of ownership; however, this presumption is not conclusive." *Matter of One 1985 Mercedes Benz Auto.,* 644 A.2d 423, 430 (Del. Super. 1992).

What distinguishes this case from those relied upon by Appellant[5] is the fact that there exists no evidence of record to demonstrate that the funds used to purchase the

---

[5] *See Moser v. Moser,* 287 A.2d 398, 400 (Del. 1972) ("When property is acquired by the use of joint funds, but title is taken in the name of one spouse alone, the property nevertheless will remain the joint property of the spouses."); *Wilmington Sav. Fund Soc'y, FSB v. Kaczmarczyk,* Civil Action No. 1769-N, 2007 Del. Ch. LEXIS 33, at *44-45 (Del. Ch. Mar. 1, 2007) (explaining that Title, coupled with evidence that the boat at

vehicles were jointly-held "marital" funds.  Although this Court is not convinced that the business banking statements for the months of March and April, 2012 are – in and of themselves - dispositive of the entire issue at bar,[6] Appellant did also testify that he has not owned a personal banking account for several years.  (J.A. Vol. II at 97-98, 265-266).[7]  Instead, the "joint" account into which he deposited and from which he withdrew money, was held with his business partner and not his wife.[8] There is no evidence of record to demonstrate that the vehicles were acquired with joint funds held by Appellant and his wife.  Appellant's argument regarding Mrs. Scioli's purported reliance on the

issue was purchased with funds obtained through a home equity loan jointly taken by both spouses, established the existence of tenants by the entireties property); *William M. Young Co. v. Tri-Mar Associates, Inc.*, 362 A.2d 214, 216 (Del. Super. Ct. 1976) ("[A]ll personal property ***purchased*** ***and*** ***used*** by the husband and wife is presumed to be held by the entireties.") (emphasis added).

[6] The Bankruptcy and District Courts appear to have given significant weight to the two months of bank statements pertaining to the Jeep.  Although this evidence demonstrated that at least a couple payments were made from the Red5 account to pay for the Jeep, it did not definitively establish ownership of all three vehicles.  This however, is irrelevant.  The Titles, coupled with Appellant's own testimony that he did not even own a personal bank account – let alone one with his wife – provided a rebuttable presumption that Appellant did not even attempt to negate.

[7] Appellant claims he was not given an opportunity to respond to the introduction of the three payments/comingling issue. (Appellant's Br. 8)  This is simply incorrect. The Bankruptcy Court invited Appellant to rebut the Title evidence and gave him an opportunity to testify after his testimony from the creditors' meeting had been presented at the hearing.  The court even went as far as to suggest it might be a good idea for Appellant to submit further briefing after providing no evidence at the hearing.  Appellant informed the court that he didn't think it was his burden and declined to offer testimony, documentary evidence, or additional briefing before the court rendered its decision. (J.A. Vol. II at 70-71).  Although Appellant has taken issue with the validity of the transcript from the creditors' meeting (in which Appellant provided sworn testimony), the Bankruptcy Court properly found the issue to be without merit.  Fed.R. Evid. 801

[8] *See Lane v. Lane (In re Lane)*, 267 B.R. 679,682 (Bankr. D. Del. 2001)("With respect to the income from Debtor's computer business which he conducted on the side, the court found no evidence that the funds in a bank account in the business's name were marital funds.").

Cadillac does nothing to change the fact that the three cars were never marital property, let alone property held by the entireties between spouses.[9]  Once Appellee provided the three Titles showing that the vehicles were in Appellant's name only,[10] the burden shifted to Appellant to provide "unequivocal evidence" that the vehicles were in fact held by he and his wife as tenants by the entireties.  Appellant failed to do so.

### III

The District Court's Order affirming the decision of the Bankruptcy Court shall be affirmed.

---

[9] *See Rigby v. Rigby,* 32 Del. Ch. 381, 383-384 (Del. Ch. 1952) (delineating characteristics necessary to create a tenancy by the entireties and concluding "that the title must be acquired by both husband and wife at the same time and in the same instrument, if there should be an instrument, or, in the absence of an instrument, in the same transaction. Neither party may obtain title separately at different times or in different instruments.")

[10] The court notes that it is apparently custom in Delaware for Titles to vehicles owned by both spouses to contain an "and/or" provision regarding the husband and wife's names. *See O'Neill v. Wilwert (In re Griest Agency, Inc.),* Bankruptcy No. 97-1108, 2000 Bankr. LEXIS 1351, at *8 n.7 (Bankr. D. Del. Nov. 13, 2000) (referencing a motor vehicle being "titled to David Griest and/or Vera Griest." (internal citation omitted)); *Fischer v. Fischer*, 864 A.2d 98, 105 (Del. Ch. 2005) ("Notwithstanding that this ['and/or'] designation may be the standard designation of the Delaware Department of Motor Vehicles, the presence of both husband and wife on the title is sufficient to create a presumption that the vehicle is held by the entireties."); *William M. Young Co. v. Tri-Mar Assoc., Inc.,* 362 A.2d 214, 216 n.2 (Del. Super. 1976) (noting that the "and/or" designation on a title ". . . is the standard designation of the Department of Motor Vehicles.").  The Titles issued for the three vehicles in this case do not contain the "and/or" designation; they are titled solely in Appellant's name.  (J.A. Vol. II at 249-259, 467-476).